In the Matter of Charles William KERN and Shirley Yvonne Kern, Bankrupts.

F. Stannard LENTZ, Trustee, Plaintiff-Appellee,

v.

The ST. MARY'S STATE BANK, Defendant-Appellant.

Nos. 76–93–B2, 76–92–B2, Civ. A. No. 77–2255.

United States District Court, D. Kansas.

Dec. 12, 1977.

**220**

Ima Goehring of Goehring, Turner & Williams, Kansas City, Mo., for bankrupts.

F. Stannard Lentz of Hamill, Lentz, Neill & Dwyer, Shawnee Mission, Kan., for plaintiff-appellee.

James W. Morrison of Morrison & Frost, St. Marys, Kan., for defendant-appellant.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This is an appeal from Bankruptcy Court by The St. Mary's State Bank (henceforth "Bank"). The issue presented is whether the Bank or the Trustee in Bankruptcy has the right to a tri-level mobile home owned by the bankrupts.

Charles William Kern and Shirley Yvonne Kern purchased the mobile home in question from Fields Mobile Homes on December 13, 1972, after borrowing $10,000.00 from the Bank and executing a promissory note in that amount. It appears to be undisputed that both the Kerns and the Bank intended that the Bank have a security interest in the mobile home. Fields Mobile Homes apparently assumed the responsibility for making an application for a Kansas Certificate of Title, and such was issued by the Motor Vehicle Department of the State of Kansas on April 18, 1973. This Certificate of Title shows the Kerns as owners, but does not show the lien of the Bank.

On February 1, 1976, the Kansas Department of Motor Vehicles issued another Certificate of Title, for the first time noting the lien of the Bank. On February 2, 1976, the Kerns filed their bankruptcy petitions. The Trustee then filed this action, contending that the Bank's lien was not perfected until February 1, 1976, and that therefore the perfection constitutes a voidable preference made within four months of bankrupt-

cy, and the Trustee is entitled to the mobile home under Section 60 of the Bankruptcy Act. The Bankruptcy Referee, in a Memorandum and Order dated August 23, 1977, ruled in favor of the Trustee. The Bank appealed, and oral argument was held on December 2, 1977.

K.S.A. 84-9-302 (as in effect in 1972) reads in pertinent part:

"(3) A security interest in

(c) a vehicle (except a vehicle held as inventory for sale) subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interests in such vehicle:

Can be perfected only by presentation, for the purpose of such registration or such filing or such indication, of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official. Such presentation and tender or acceptance shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article."

Under K.S.A. 8-135, it is clear that two of the "documents" which must be presented to the state in order to obtain a Certificate of Title are an Application for Certificate [K.S.A. 8-135(c)(1)], and a "Bill of Sale stating the lien or encumbrances thereon." [K.S.A. 8-135(c)(3)].

The Bank relies on *In re Littlejohn*, 519 F.2d 356 (10th Cir. 1975), a case also involving Kansas law. In *Littlejohn*, the purchasers-bankrupts never applied for a Certificate of Title and therefore, of course, no title ever issued. After bankruptcy, the Trustee contended that since no title had ever issued (with or without notation of lien), the security interest had never been perfected, and the Trustee was entitled to the car. The Tenth Circuit held, in effect, that once the lienholder had managed to get its lien *noted on the Bill of Sale*, it had done all that it could reasonably be expect-

ed to do. The actual steps necessary to obtain a Certificate of Title are the responsibility of the purchaser, and the lienholder has no method of forcing the purchaser to take them:

"The statutory scheme in Kansas clearly contemplates that it is the responsibility of the purchaser of a new vehicle to obtain the certificate of title, and the cases have so held . . . (citations omitted). Once Merriam Motors had given the Littlejohns a bill of sale, indicating the lien of the Bank, this is sufficient to place a potential buyer or creditor on notice of the existence of the lien. In the absence of fraud, a certificate of title, when issued, would contain a notation of the lien. Thus, only through fraud could a certificate of title be obtained which didn't show the lien."

■ Thus, even under the relaxed standards of *Littlejohn*, we believe that it is part of the Bank's obligation to have its lien noted on the Bill of Sale. The key factor here seems to be potential harm to innocent third parties. If a purchaser simply fails to apply for a Certificate of Title, as in *Littlejohn*, then it is difficult to see how any harm can befall innocent third parties. The purchasers could not transfer title without a valid Certificate of Title. In addition, without seeing a valid Certificate of Title that did not list any liens, no creditor could levy upon the car and be assured that the car was not already encumbered. However, if the lienholder fails to have its lien noted on the Bill of Sale, and a Certificate of Title therefor issues without notation of the lien, the potential damage to subsequent purchasers or creditors is great.

The missing link in this case appears to be a question of fact: WHY did the Certificate of Title issue without notation of the Bank's lien? If the Bank simply failed to get its lien noted on the Bill of Sale, then clearly the Trustee should prevail. If, on the other hand, the Bank did have its lien noted on the Bill of Sale, then the argument for the Bank is much stronger, since a literal reading of K.S.A. 84–9–302 requires only *tender* of the appropriate documents to obtain issuance of a Certificate of Title, and not the actual *issuance* of the Certificate of Title.

The record below does not contain a copy of the Bill of Sale or otherwise shed light on the issue of why the Certificate of Title issued without notation of the lien. At oral argument on December 2, 1977, counsel for both sides informed the court that they had exhausted all possibilities, and that it was not possible to find a copy of the Bill of Sale.

Under the circumstances, we believe that the Bank must bear the burden of proving that it did have its lien noted on the Bill of Sale. Since K.S.A. 8–135 requires presentation of the Bill of Sale to obtain a Certificate of Title, and since a Certificate of Title did issue, we must assume that a Bill of Sale was presented. Further, since there are no allegations, much less evidence, of either fraud or administrative error, we must assume that the Bill of Sale presented did not contain any notation of the Bank's lien. Accordingly, the Bank did not do all that it could have to perfect its security interest; the security interest was never perfected; and therefore, the Trustee is entitled to the car.

The judgment of the Bankruptcy Court will be affirmed.

IT IS SO ORDERED.